**In the Matter of CAL–NEVA LODGE, INC., a Nevada corporation, Debtor.**

**No. 923.**

United States District Court
D. Nevada.

June 27, 1960.

Howard W. Babcock, U. S. Atty., Reno, Nev., Leon Yudkin & Joseph O. Greaves, Attorneys, Office of Regional Counsel Internal Revenue Service, San Francisco, Cal., Francis F. Quittner, Los Angeles, Cal., Aaron Levinson, Beverly Hills, Cal., R. K. Wittenberg, Reno, Nev., all appearing for Cal-Neva Lodge, Inc.

ROSS, District Judge.

██ Collection of Federal taxes is governed by Federal law. State statutes cannot be invoked to frustrate that collection. It is well established that the law of the forum determines the nature, the form, and the extent of the remedy. As elsewhere, this principle obtains in the area of tax collection.

In the instant case, this Court is the forum. And in applying the remedy in aid of the collection of a Federal tax, this tribunal will be guided by the law of the forum, in other words, by Federal law.

### 1. Statement of the Case.

On April 1, 1959, the Referee in Bankruptcy filed an opinion holding that the levy of the United States upon a secured obligation of Cal-Neva Lodge, Inc., owing to Elmer F. Remmer and Helen L. Remmer, should be denied, and further concluding that the sum of $7,764.53, representing interest at 6% from the date of the levy should be denied "for the reasons (sic) that the levy itself fails to constitute a lien against the debtor."

On April 18, 1959, the Referee filed "Findings of Fact, Conclusions of Law, and Order re Objections to Proof of Claim of District Director of Internal Revenue for the District of Nevada (hereinafter the Director) as Amended." The Referee's Order read as follows:

"That the amended claim of the District Director of Internal Revenue for the District of Nevada on file herein in the principal sum of $921,667.09 plus interest be, and the same is, hereby disallowed, save and except for the sum of $18,117.40, which said sum of $18,117.40 only is allowed as a claim entitled to priority pursuant to the provisions of Section 64 [sub.] a(4) of the Bankruptcy Act. [11 U.S.C.A. § 104, sub. a(1)]."

On May 26, 1959, the United States filed a Petition for Review of the Order of the Referee of April 18, 1959, complaining, among other things, that:

(a) The United States was not required to exhaust the security acquired by the Remmers on the Cal-Neva Lodge property before its claim in bankruptcy could be allowed.

(b) The order of the Referee in Bankruptcy is erroneous and contrary to law.

On February 10, 1960, the Referee filed his Certificate of Review, which contained the following statement:

"Since the filing of the said Petition for Review the * * * Director * * * has abandoned that portion of its Review (sic) relating to alleged income taxes claimed as owing by the Debtor herein to the United States by filing an amended claim eliminating all claims for income taxes and penalties and interest thereon. The only matter now in controversy relates to the effect of the levy by the United States on June 1, 1953, on the secured obli-

gation of the Debtor then owing to the Remmers."

It is solely to the effect of the levy of June 1, 1953, therefore, that this opinion is directed.

### 2. Statement of Facts.

Cal-Neva Lodge, Inc., hereinafter the debtor, accepts the statement of facts set out in the Referee's Opinion of March 31, 1959, and this Court does likewise.

On December 31, 1948, the debtor purchased the Cal-Neva Lodge, a property located in both Nevada and California, from Elmer F. Remmer and Helen L. Remmer. As part of the consideration, the debtor executed a first deed of trust on the Cal-Neva Lodge property to the Remmers. To evidence the amount of the purchase price remaining unpaid, the debtor issued a note in California, to the Remmers, the note bearing four (4%) percent interest.

Subsequently, the Remmers became involved in tax difficulties with the United States.

On June 1, 1953, the United States levied upon the secured obligation of the debtor, which was owing to the Remmers. At the time of the levy, the debtor owed the Remmers $198,333.34, plus accrued interest at 4% from December 31, 1948. In addition, the United States asserted a claim for interest at 6% from the date of the levy.

At this juncture, both parties and the Referee himself have fallen into a common error. All three assume that the claim of the United States was asserted pursuant to "Section 6332(b) of the Internal Revenue Code of 1954 [26 U.S. C.A. § 6332(b)]." But Section 6332(b) was enacted on August 16, 1954, and, according to 26 U.S.C.A. § 7851(a) (6) (B), Section 6332, being part of Chapter 64 of Title 26, became effective "On and after January 1, 1955." As we have seen, the levy by the United States was made on June 1, 1953.

As a matter of law, the levy of the United States was made under the provisions of Section 3692 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 3692, which was enacted on February 10, 1939, and which, except as to certain provisions not relevant here, took effect "on the day following the date of its enactment." 26 U.S.C.A. § 3.

The section relating to the "Surrender of property subject to distraint," however, is 26 U.S.C.A. § 3710, which is part of the Internal Revenue Code of 1939. The pertinent portion of that section follows:

"§ 3710. Surrender of property subject to distraint.

"(a) Requirement. Any person in possession of property, or rights to property, subject to distraint, upon which a levy has been made, shall, upon demand by the collector or deputy collector making such levy, surrender such property or rights to such collector or deputy, unless such property or right is, at the time of such demand, subject to an attachment or execution under any judicial process.

"(b) Penalty for violation. Any person who fails or refuses to so surrender any of such property or rights shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of the taxes (including penalties and interest) for the collection of which such levy has been made, together with costs and interest from the date of such levy."

After the levy, the debtor sold the Cal-Neva Lodge property to Park Lake Enterprises, Inc., which agreed to assume the secured obligation to the Remmers.

The United States previously, and originally, asserted that the debtor was indebted to it in the sum of $241,136.75, $198,333.34 as principal, and $35,038.88 as interest at 4%, plus $7,764.53 as interest at 6% per annum from the date of levy. As we have seen, the United States now has eliminated "all claims for

income taxes and penalties and interest thereon."

3. Federal Tax Liens and the Provisions for Their Collection Are "Strictly Federal and Strictly Statutory."

■ Both the debtor and the Referee in Bankruptcy make frequent references to California and Nevada law in support of their position that "there shall be only one action maintained for the recovery of any debt secured by a mortgage and that action shall be by foreclosure" and "In California, at least, even the right to recover on the note for any deficiency remaining after foreclosure is denied in the case of a purchase money mortgage," etc.

The problem before this Court is to be decided according to Federal and not State authority. The Ninth Court of Appeals, in Bank of Nevada v. United States, 9 Cir., 1957, 251 F.2d 820, 824, certiorari denied, 1958, 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813, declared:

"The Supreme Court has repeatedly and emphatically stated that Federal tax liens and the provisions for their collection are strictly Federal and strictly statutory." (Many authorities cited and quoted)

Quoting the above language with approval, our Court of Appeals followed the Bank of Nevada decision in United States v. Christensen, 9 Cir., 1959, 269 F.2d 624, 627.

This, then, is the climate in which this Court must assess the debtor's contentions.

4. The Statutory Prohibition against the Collection of a Penalty in a Bankruptcy Case Is No Longer Relevant in This Proceeding.

Despite the fact that, in the Referee's "Certificate on Review," filed on February 10, 1960, it was specifically stated that the United States had filed "an amended claim eliminating all claims for income taxes and penalties," etc., the debtor, in its "Reply Memorandum", filed more than two months later, insists that "the claim asserted against the Debtor by the United States under Section 6332 (b) of the Internal Revenue Code must be disallowed in these proceedings as a penalty," etc.

Accordingly, in the present Opinion and Order, this Court will devote but little time to the "penalty" issue so earnestly raised by the debtor.

5. The Levy of the United States upon the Debtor's Secured Obligation in Favor of the Remmers Was Completely Effectual.

■ In his opinion of April 1, 1959, the Referee ruled that "The claim of the United States against Cal-Neva Lodge, Inc., for monies allegedly owing (by?) Cal-Neva Lodge, Inc., to the Remmers is invalid for the reason that the Remmers themselves could not claim any liability on the note against Cal-Neva Lodge, Inc., but are required by the law of the State of California and Nevada to look to the security first for payment."

In addition, the debtor "bases its objection to the allowance of the amended Proof of Claim of the * * * Director * * * on dual grounds. Initially, * * * the attempted levy by the United States * * * was completely ineffectual. Secondly, * * * the claim asserted against the Debtor * * * must be disallowed * * * as a penalty," etc.

In the preceding section of this Opinion and Order, this Court has disposed of the debtor's second contention. Attention is therefore now addressed to the debtor's first objection. Namely: that the attempted levy by the United States was completely ineffectual.

At the outset, it should be borne in mind that it is a hornbook principle that "the law of the forum governs as to the nature, form and *extent* of the remedy." (Emphasis supplied.) 15 C.J.S. Conflict of Laws § 9, page 878; Id., § 22, pages 948–952; 17 C.J.S. Contracts § 21, pages 353–354.

It must be to Federal law, then, that we must look for guidance in determin-

ing the rights of the parties in the instant case.

The United States levied upon and seized the debt, not the security, which the debtor owed Remmer.

In United States v. Eiland, 4 Cir., 1955, 223 F.2d 118, 121, Chief Judge Parker said:

"There can be no question, we think, but that the lien for taxes provided by the statute can be asserted against intangible property such as a debt. (Many cases cited) And we think it equally clear that the proper way to assert the lien is by levy and notice such as was served here."

The claim of the United States for a debt seized prior to bankruptcy, under 11 U.S.C.A. § 104, sub. a(5), is a priority claim.

In the case of In re Cherry Valley Homes, Inc., 3 Cir., 1958, 255 F.2d 706, 707, certiorari denied Du Bois v. United States, 1958, 358 U.S. 864, 79 S.Ct. 96, 3 L.Ed.2d 97, the Court used the following language:

"In legal contemplation and consequence, this levy effectively and exclusively appropriated the debt to the satisfaction of the tax claim six months before the Chapter X proceeding was instituted. (Cases cited.) Such a levy is treated in law like a seizure of corporeal property, taken into the possession of a collector by way of distraint for taxes. (Authorities cited.) * * * By whatever name the appropriation shall be called, it seems clearly sufficient to establish a priority of right to satisfaction which the debtor's subsequent insolvency does not affect."

■ The remedy of the United States to enforce collection of taxes by the summary administrative method of distraint "is a special privilege it has which is analogous to, but in addition to, garnishment and other remedies of an ordinary creditor." (Cases cited.) United States v. Manufacturers Trust Co., 2 Cir., 1952, 198 F.2d 366, 368.

Continuing, in the Manufacturers Trust decision, Judge Chase said:

"It (the Government's remedy) is a constitutionally valid expedient for the collection of taxes necessary to the very existence of government, (cases cited) and has been available by law since 1791." (Cases cited.)

■ A claim by the United States under 11 U.S.C.A. § 104, sub. a(5), supra, based upon a levy upon a bankrupt prior to bankruptcy, is an allowable one. In the Cherry Valley Homes case, supra, 255 F.2d at page 707, the Court observed:

"Alternatively, as the government urges here, since the possessory concept of 'seizure' is not strictly applicable to a debt, it seems correct to say that the tax levy through process served upon the debtor at least accomplished an assignment of Tobin's claim against Cherry Valley to the United States by operation of law. This approach brings into decisive effect the provision of Revised Statutes, Section 3466, 31 U.S.C.A. Section 191, that 'whenever any person indebted to the United States is insolvent * * the debts due to the United States shall be first satisfied.' This language has been applied to claims, originally between private parties, the benefit of which has in various ways been assigned or transferred to the United States. (Cases cited.) We think it applies here as well."

Such a claim is not a penalty in the instant case. Double liability is not sought. The debtor is merely required to render unto Caesar the things that are Caesar's. Cal-Neva must pay only what it otherwise would be required to pay to Remmer.

As was remarked in the Eiland case, supra, 223 F.2d at page 121:

"The effect of the federal taxing statutes to which we have referred is to create a statutory attachment

and garnishment in which the service of notice provided by statute takes the place of the court process in the ordinary garnishment proceeding. There is no necessity for adjudicating the amount of the tax under the statutory proceeding (cases cited); and, consequently, the service of such notice results in what is virtually a transfer to the government of the indebtedness, or the amount thereof necessary to pay the tax, so that payment to the government pursuant to the levy and notice is a complete defense to the debtor against any action brought against him on account of the debt."[1]

■ Cal-Neva was indebted to Remmer at the time the United States levied on that debt. The obligation was due at that time. The debtor's failure to pay was a withholding of funds owing to the United States, for which the debtor must pay interest of 6% for electing not to pay the money at the time of the levy.

In United States v. Childs, 1924, 266 U.S. 304, 309–310, 45 S.Ct. 110, 111, 69 L.Ed. 299, the Supreme Court adverted to the distinction between interest and penalty, saying:

> "The tax in this case is one on income; a burden imposed for the support of the government. Interest is put upon it and so denominated, distinguished from the 5 per cent. as penalty, clearly intended to compensate the delay in payment of the tax—the detriment of its non-payment, to be continued during the time of its nonpayment—compensation, not punishment."

Furthermore, the United States in this case has specifically eliminated all claims for income taxes and penalties and interest.

To summarize, the claim of the United States for money owing to the Remmers by the debtor Cal-Neva, which was levied upon prior to bankruptcy, is hereby allowed as a priority claim under 11 U.S.C.A. § 104, sub. a(5).

### 6. Conclusion.

In view of the holding of this Court regarding the levy of the United States, infra, and the abandonment by the United States of all its other claims, the Order of the Referee in Bankruptcy dated April 18, 1959, is hereby set aside, and in its stead the following Order is substituted:

### Order

The levy of the United States on June 1, 1953, upon the secured obligation of the debtor then owing to Elmer F. Remmer and Helen L. Remmer, in the amount of $198,333.34, plus accrued interest at 4% from December 31, 1948, plus interest at 6% from the date of the levy, was completely effectual, and it is hereby sustained.

It is so Ordered.

[1]. See also Columbian Nat. Life Ins. Co. v. Welch, 1 Cir., 1937, 88 F.2d 333; and Bank of Nevada v. United States, supra, 251 F.2d at page 828.