NATIONAL LABOR RELATIONS BOARD, Appellant,

v.

NASH-FINCH COMPANY, d/b/a Jack and Jill Stores, Appellee.

NATIONAL LABOR RELATIONS BOARD,

v.

NASH-FINCH COMPANY, d/b/a Jack and Jill Stores, a Delaware Corporation Authorized to Do Business in the State of Nebraska, Appellee,

v.

AMALGAMATED MEAT CUTTERS & BUTCHER WORKMEN OF NORTH AMERICA, AFL-CIO, DISTRICT UNION 271, Appellant.

Nos. 19983, 19993.

United States Court of Appeals, Eighth Circuit.

Dec. 2, 1970.

---

Glen M. Bendixsen, Atty., N.L.R.B., Washington, D. C., for N.L.R.B.

William A. Harding, Lincoln, Neb., for Nash-Finch Co., etc.

Solomon I. Hirsh, Chicago, Ill., for Amalgamated Meat Cutters, etc.

Before GIBSON and LAY, Circuit Judges, and HUNTER, District Judge.

ELMO B. HUNTER, District Judge.

This case is before us on appeal from an order of the United States District Court for the District of Nebraska dismissing an action for injunctive relief instituted by the National Labor Relations Board against Nash-Finch Company, d/b/a Jack & Jill Stores. The Board's complaint, brought pursuant to 28 U.S.C. Section 1337,[1] sought to restrain the Company from proceeding under or from enforcing an injunction issued by the District Court of Hall Coun-

---

1. 28 U.S.C. § 1337 gives a District Court jurisdiction of questions arising under an Act of Congress; see, Capital Service v. N.L.R.B., 347 U.S. 501, 74 S.Ct. 699, 98 L.Ed. 887 (1954); Amalgamated Clothing Workers of America v. Richman Brothers, 348 U.S. 511, 75 S.Ct. 452, 99 L.Ed. 600.

ty, Nebraska, against Amalgamated Meat Cutter and Butcher Workmen of North America, AFL–CIO, District Union 271 and persons in active concert and participation with it, on the grounds that such injunction regulated conduct preempted by the National Labor Relations Act and interfered with the Board's exclusive jurisdiction over the subject. The Union by motion unsuccessfully endeavored to intervene as a party plaintiff in the action, and also has appealed.

The District Court in a carefully considered unpublished opinion ruled against both the Board and the Union. Upon consideration of the various issues presented on appeal, we affirm.

## Background

In August, 1968, the Union began an organizing campaign among the meat department employees of the Jack & Jill stores in Grand Island, Nebraska. The Union demanded recognition based on signed authorization cards, and the Company expressed what it termed a good faith doubt of the Union's majority status, refused to bargain and filed a petition with the National Labor Relations Board for an election.

On October 9, 1968, the Union filed unfair labor practices against the Company alleging violations of Section 8(a) (1) and (5) of the Labor Management Relations Act. The Board's Regional Director investigated the charges regarding certain Company conduct at its Grand Island and Hastings, Nebraska stores and on January 7, 1969, issued an unfair labor practice complaint concerning the Company's refusal to bargain with the Union and miscellaneous unfair labor practices involving interrogation and solicitation by the Company of its employees regarding the Union. The Company denied the alleged unfair labor practices.

Following the statutory hearing, the trial examiner on April 28, 1969, found that the Company had violated Section 8(a) (1) and (5) of the Act by refusing to bargain with the Union as the exclu-

sive representative of its employees in an appropriate unit, by suggesting the substitution of non-Union in place of Union representation, by soliciting employee revocation of prior Union authorizations as bargaining agent, by advising employees not to attend Union meetings and by coercively interrogating employees concerning Union representation. The trial examiner recommended inter alia, that the Company cease and desist from soliciting employee revocation of Union designation cards, suggesting the substitution of non-Union representation, advising employees not to attend Union meetings, coercively interrogating employees concerning Union representation and in any like or related manner interfering with, restraining or coercing employees in the exercise of their rights under the Act. The trial examiner also recommended that the complaint be dismissed as to allegations of unfair labor practices not specifically found to have been engaged in. The Company filed exceptions to the recommended decision.

Approximately one month after the issuance of the trial examiner's recommended decision, and before the Board's decision, the Union began picketing the Company's Grand Island, Nebraska stores with signs advising the public that the Union was striking in protest of the Company's unfair labor practices. The Union also distributed handbills stating the Company refused to bargain or comply with other findings or recommendations of a trial examiner of the National Labor Relations Board and urged the public not to shop at the Company's stores.

On September 17, 1969, the Board reversed the trial examiner's decision and concluded that the Company had not violated Section 8(a) (1) and (5) of the Act by refusing to bargain with the Union, and that the Union had not represented a valid majority of the Company's employees when the bargaining demand was made. The Board concluded the Company had violated Section 8(a) (1) by its other actions and it entered a cease and desist order in that regard.

On May 27, 1969, the Company filed a petition for injunctive relief in the District Court of Hall County, Nebraska against the Union, its officers and certain individual pickets, alleging that the Union's picketing as engaged in included threatening and intimidating customers, stopped, blocked, and prevented free ingress and egress of the public to and from the picketed premises and constituted mass picketing, in violation of Section 28–814.02 of the Nebraska Revised Statutes. Shortly thereafter the state court issued its injunction which limited the Union's picketing in certain respects.[2]

On August 27, 1969, the Board filed a complaint in the Federal District Court of Nebraska against the Company, seeking to restrain the Company from enforcing or attempting to enforce those parts of the state court temporary injunction alleged to violate Article VI, Clause 2 (The Supremacy Clause) of the Constitution of the United States because it conflicted with the National Labor Relations Act, and other parts of the injunction claimed to restrain peaceful picketing [3] and to be within the area arguably preempted by the National Labor Relations Act.

Upon motion by the Company, the federal district court dismissed the complaint, relying on 28 U.S.C. Section 2283 which provides, "A court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." It also dismissed the Union's motion to intervene as a party plaintiff.

### First Contention

On this appeal the Board contends that the National Labor Relations Board is the United States for the purpose of 28 U.S.C. Section 2283, and therefore that provision is not a bar to the issuance of a federal district court injunction. It cites and relies on Leiter Minerals v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957).

We recognize that in a long line of decisions it has been decided that the prohibition of Section 2283 does not apply to the United States as a party seeking an injunction of state court proceedings. Leiter Minerals v. United States, *supra;* Machesky v. Bizzell, 414 F.2d 283 (5th Cir. 1969); United States v. Wood, 295 F.2d 772 (5th Cir. 1961); Studebaker Corp. v. Gittlin, 360 F.2d 692 (2nd Cir. 1966); Baines v. City of Danville, 337 F.2d 579 (4th Cir. 1964), cert. den. 381 U.S. 939, 85 S.Ct. 1772, 14 L.Ed.2d 702; Brown v. Wright, 137 F.2d 484 (4th Cir. 1943); United States v. Farmers State Bank, 249 F.Supp. 579 (D.S.D.1966); Sobol v. Perez, 289 F.Supp. 392 (E.D. La.1968). However, the Board's contention and rationale that it is to be treated as the United States since it is an agency of the United States, and, therefore that Section 2283 does not bar the issuance of an injunction has been unsuccessfully asserted by it over the years, and has been firmly rejected by this court in N.L.R.B. v. Swift & Co., 233 F.

2. The Union was limited, inter alia, to two pickets at each store; enjoined from distributing certain handbills, from blocking entrances or exits to the store, from conversing with the store's customers and from picketing in violation of the mentioned Nebraska statutes.

3. No record testimony was taken in the district court regarding the factual situations surrounding the picketing. Appellant denies that only peaceful picketing occurred, stating in its brief that there were blocked entrances, nails in parking lots, property damage and a series of bomb threats. Because of our finding that the federal district court was without authority to enjoin the state court proceeding, we do not reach the question of whether the state court had power or jurisdiction to issue the order restraining the primary picketing. See, Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970).

2d 226 (8th Cir. 1956). We quote from that decision, loc. cit. 232:

"The Board, citing United States v. United Mine Workers of America, 330 U.S. 258, 272, 67 S.Ct. 677, 91 L.Ed. 884, asserts that statutes which in general terms divest previously-existing rights will not be applied to the sovereign without express words to that effect, and then contends that as an agency of the United States it must be considered in the same light as the United States for the purpose of the construction of the applicability of section 2283. The authorities cited by the Board do not support its contention that it has acquired all the privileges and immunities of the United States. For example, we think Nathanson v. National Labor Relations Board, 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23, cited by the Board, negatives the Board's contention. It was there held that a debt owed the Board was not entitled to preference as a debt owed the United States. The intention of Congress to bestow the privileges and immunities of the Government upon agencies created by the Government must be clearly demonstrated. Reconstruction Finance Corporation v. J. G. Menihan Corp., 312 U.S. 81, 61 S.Ct. 485, 85 L. Ed. 595."

\*   \*   \*   \*   \*   \*

"The Board has not demonstrated that it was the intention of Congress to exempt actions brought by it from the limitations imposed by section 2283."

Thus, in *Swift* and in other decisions it is established that the intention of Congress to bestow the privileges and immunities of the United States upon agencies created by the United States must be clearly demonstrated. As in *Swift*, there is no demonstration here that Congress intended to exempt actions brought by the National Labor Relations Board from the limitation imposed by Section 2283, and we are not justified in extending the exemption doctrine applicable to the United States

to that Board. As stated by the Supreme Court in *Amalgamated Clothing Workers, supra,* 348 U.S. 514, 75 S.Ct. 454: "By that enactment [Section 2283], Congress made it clear beyond cavil that the prohibition is not to be whittled away by judicial improvisation."[4] Many of the problems of state-federal relationship which Congress sought to avoid by enacting Section 2283 would not be avoided if by judicial improvisation we extended the doctrine of the *Leiter* case to include federal agencies not specifically granted the cloak of sovereignty by statute. The *Leiter* case, supra, involved the United States itself and not an agency of the United States.

We again hold that for the purpose of Section 2283 applicability, the National Labor Relations Board is an administrative agency of the United States, and is not the United States. We further hold that Section 2283 is applicable to the National Labor Relations Board as a party seeking to enjoin a state court injunction or state court proceedings.

### Second Contention

■ The Board next contends that the area covered by the state court injunction has been preempted by Congress, and is within the exclusive jurisdiction of the National Labor Relations Board. Therefore, the Board asserts, Section 2283 does not apply as the state court is wholly without jurisdiction over the subject matter.

This contention of a general federal preemption of picketing so as to preclude applicablity of Section 2283 previously has been unsuccessfully urged by the Board, and others, in other cases. In *Swift, supra* at 230, this court ruled the contention against the Board, citing and quoting from Amalgamated Clothing Workers of America v. Richman Brothers, 348 U.S. 511, 515–516, 75 S.Ct. 452, 99 L.Ed. 600. There, speaking for the Supreme Court Mr. Justice Frankfurter

4. To the same effect, see, Norwood v. Parenteau, 228 F.2d 148 (8th Cir. 1955), cert. den. 351 U.S. 955, 76 S.Ct. 852, 100 L.Ed. 1478 (1954).

stated: "In the face of this carefully considered enactment, [Section 2283] we cannot accept the argument of petitioner and the Board, as amicus curiae, that § 2283 does not apply whenever the moving party in the District Court alleges that the state court is 'wholly without jurisdiction over the subject matter, having invaded a field preempted by Congress.' No such exception had been established by judicial decision under former § 265. In any event, Congress has no justification for its recognition now. This is not a statute conveying a broad general policy for appropriate ad hoc application. Legislative policy is here expressed in a clear-cut prohibition qualified only by specifically defined exceptions."

We further declared in *Swift, supra* at 230, that: "The [Supreme] Court, 348 U.S. at page 518, 75 S.Ct. at page 457 also fully answers the contention made in our present case, that if a State action is not halted the Federal labor relations plan will be disrupted, by stating that the State courts have for many years adequately protected Federal rights, and that, 'The prohibition of § 2283 is but continuing evidence of confidence in the state courts, reinforced by a desire to avoid direct conflicts between state and federal courts.' " [5]

Even more directly to the point, is the recent case of Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970), in which a federal district court enjoined a railroad from invoking an injunction issued by a Florida state court prohibiting certain picketing by the Union.[6] Speaking through Mr. Justice Black, the Supreme Court reversed and declared: "First, a federal court does not have inherent power to ignore

the limitations of § 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area preempted by federal law, even when the interference is unmistakably clear. This rule applies regardless of whether the federal court itself has jurisdiction over the controversy, or whether it is ousted from jurisdiction for the same reason that the state court is. Cf. Amalgamated Clothing Workers v. Richman Bros., supra, 348 U.S. at 519–520, 75 S.Ct. 452, at 457–458, 99 L.Ed. at 609–610. This conclusion is required because Congress itself set forth the only exceptions to the statute, and those exceptions do not include this situation. Second, if the District Court does have jurisdiction, it is not enough that the requested injunction is related to that jurisdiction, but it must be '*necessary in aid of*' that jurisdiction. While this language is admittedly broad, we conclude that it implies something similar to the concept of injunctions to "protect or effectuate" judgments. Both exceptions to the general prohibition of § 2283 imply that some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case."

\*    \*    \*    \*    \*    \*

"Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy. The explicit wording of § 2283 itself implies as much, and the fundamental principle of

5. The anti-injunction statute has been on the books in some form since 1793. See, Act of March 2, 1793, Ch. 22, § 5, 1 Stat. 335, Durfee & Sloss, Federal Injunction against Proceedings in State Courts: The Life History of a Statute, 30 Mich.L.Rev. 1145 (1932).

6. Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S.

281, 90 S.Ct. 1739 (1970), held that the prohibition in 28 U.S.C. § 2283 can not be evaded by addressing an order to the parties or by prohibiting utilization of the results of a completed state court proceeding. See, also, Oklahoma Packing Co. v. Oklahoma Gas & Electric Co., 309 U.S. 4, 60 S.Ct. 215, 84 L.Ed. 537 (1940); Hill v. Martin, 296 U.S. 393, 56 S.Ct. 278, 80 L.Ed. 293 (1935).

a dual system of courts leads inevitably to that conclusion."

We conclude there has not been any general preemption of the field so as to deprive the state court of jurisdiction over the subject matter and to cause Section 2283 to be inapplicable in a federal court proceeding to enjoin enforcement of a state court injunction.

### Third Contention

■ The Board further contends that if Section 2283 is applicable, the questioned activities are within the ambit of Sections 10(j) and 10(*l*) of the National Labor Relations Act and therefore with-gress" or "in aid of its jurisdiction" ex-in the "as authorized by an Act of Con-ceptions to Section 2283. However, the Board has not issued a complaint in the instant case which will allow it to seek an injunction under the terms of 10(j) or 10(*l*) of the National Labor Relations Act.[7] The picketing in this case which has been enjoined by the state court has never been made the subject of an unfair labor practice charge or complaint.[8] The state court injunction does not concern itself with a refusal to bargain, interrogation of employees or solicitation of employees to withdraw from the Union or with any other matter before the Board in its unfair labor practice complaint of January 7, 1968.

Thus, the Board is not in a sound position on the record before us to successfully contend the requested federal injunction falls within the statutory exceptions "as authorized by an Act of Congress" or the "in aid of its jurisdiction," and in the light of the teachings in *Atlantic Coast Line R. Co. and Amalgamated Clothing Workers of America, supra,* we find no merit in the Board's contention in that regard.

The Board cites Capital Service, Inc. v. N.L.R.B., 347 U.S. 501, 74 S.Ct. 699, 98 L.Ed. 887 (1954). There, the Company had filed suit in the state court for an injunction against the Union and had also filed with the Board a charge of unfair labor practice against the Union. Each had as a basis the same conduct of the Union. The state court enjoined all picketing of retail stores. The Regional Director issued an unfair labor practice complaint of a limited nature and petitioned the federal district court for an injunction restraining such conduct of the Union pending final adjudication by the Board, as required by Section 10(*l*) of the Act. Simultaneously with the filing of the Section 10(*l*) petition, the Board filed suit in the same court asking that petitioner be enjoined from enforcing the state court injunction. The district court granted a preliminary injunction restraining the employer from enforcing the state court injunction. The Supreme Court affirmed, holding that the injunction issued by the District court was "necessary in aid of its jurisdiction" and thus permitted under the exceptions specifically allowed by Congress. However, *Capital Service, Inc.,* is clearly inapplicable here, for as earlier noted, there has not been any application by the Board for an injunction to restrain activities upon which a complaint has been issued by it. Nor are we confronted in the instant case with the same basic activity as that which the state court had before it, for 10(j) and (*l*) has not been followed so as to present any picketing issue to the federal court.

Thus, we have concluded the federal district court correctly decided that in view of the limitations placed on it by 28 U.S.C. Section 2283 it did not have power to issue the relief requested by the Board.

### Motion to Intervene

■ We also accord with the district court's denial of the motion of the Union to intervene entered after the trial court

---

7. 29 U.S.C. § 160(j) and (*l*).

8. The federal trial court found "the picketing in question is not involved in the complaint issued by the Board on January 7, 1969."

had determined it did not have power to grant the relief requested by the Board and dismissed the Board's complaint. Since the plaintiff—the Board—had not brought its action within any of the exceptions to Section 2283, no proper purpose would be served by permitting the requested intervention. Collins v. Laclede Gas Co., 237 F.2d 633 (8 Cir. 1956); Rosso v. Commonwealth of Puerto Rico, 226 F.Supp. 688 (D.P.R.1964).

In accordance with the reasons given above, the judgment of the district court is affirmed.